AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
|---|---|
| v. | ) |
| TYRONE GERRY DORGILE, a/k/a "MIKE JONES," | ) Case No. 23-mj-6200-Hunt |
| and | ) |
| MICHELLE LYNN JONES, | ) |
| | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __Feb. 1, 2023 - May 4, 2023__ in the county of __Broward__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a), 846 | Conspiracy to distribute a controlled substance |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

DEA SPECIAL AGENT PATRICK GITTELSOHN
*Printed name and title*

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim.P. 4.1 by __telephone__

Date: 5/5/2023

_____
*Judge's signature*

City and state: __Fort Lauderdale, Florida__   U.S. MAGISTRATE JUDGE PATRICK M. HUNT
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Special Agent Patrick Gittelsohn, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I am a Special Agent with the Drug Enforcement Administration ("DEA") assigned to the Miami Field Division, Enforcement Group 10. I have been a DEA Special Agent since September 2007. My duties include investigating crimes involving drug trafficking and distribution, as well as disrupting, and ultimately dismantling drug trafficking organizations. I have received training on the proper investigative techniques for these violations, including the use of surveillance techniques, undercover activities, and the application and execution of arrest and search warrants.

2. Through my training and experience, I have become familiar with how narcotics traffickers smuggle, transport, store, and distribute narcotics, as well as how they collect and launder drug proceeds. I am also familiar with the manner in which narcotics traffickers use cellular device technology, coded or slang terms, false or fictitious identities, as well as other means to facilitate their illegal activities and thwart law enforcement investigations.

3. As a law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), I am empowered by law to conduct investigations of and make arrests for, but not limited to, offenses enumerated in Titles 18, 21, and 46 of the United States Code.

4. I make this Affidavit in support of a criminal complaint charging Michelle Lynn JONES ("JONES") and Tyrone Gerry DORGILE, a/k/a "Mike Jones," ("DORGILE") with conspiracy to distribute a controlled substance, that is, a mixture and substance containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Sections 841(a) and 846.

5. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is submitted for the sole purpose of establishing probable cause for a criminal complaint against JONES and DORGILE. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested criminal complaint, it does not include every fact known to me about this matter.

## PROBABLE CAUSE

6. Since September 2022, law enforcement has been investigating the drug trafficking activities of a JONES and others with the use of a DEA Confidential Source ("CS"). Over the course of several months, the CS purchased ounce quantities of fentanyl from JONES on various occasions.

7. For instance, on or about February 1, 2023, at law enforcement instruction, the CS arranged to purchase one (1) ounce of powder fentanyl in exchange for $2,200 from JONES at a residence, located in Tamarac, Florida, in Broward County, in the Southern District of Florida (the "Residence"), which previously was known to the CS as the residence of JONES. Additionally, Florida Driver and Vehicle Information Database ("DAVID") records reflected that JONES resided at the Residence.

8. Prior to conducting the controlled purchase on or about February 1, 2023, law enforcement searched the CS and his/her vehicle for illegal contraband, and none was found. Law enforcement also provided the CS with $2,200 Official Advance Funds ("OAF").

9. Law enforcement maintained surveillance of the Residence prior to, throughout, and after the controlled purchase on or about February 1, 2023.

10. On or about February 1, 2023, law enforcement observed the CS arrive at the Residence and go inside. According to the CS, once the CS was inside, the CS provided JONES with the $2,200 OAF. Law enforcement thereafter observed JONES exit the Residence, walk down the street, and approach a red Mitsubishi vehicle, bearing Florida license plate ending in -FDN (the "Red Mitsubishi"). Law enforcement then observed a hand-to-hand transaction between JONES and the front seat passenger—a Black male wearing a gray hoodie and a black head covering. Law enforcement then observed JONES walk back to the Residence.

11. Once back inside the Residence, JONES provided the CS with one (1) ounce of powder fentanyl.

12. Immediately following the narcotics transaction, DEA agents followed the CS to a neutral debrief location, where he/she relinquished the one (1) ounce of powder fentanyl to DEA agents, of which subsequent lab tests returned positive for fentanyl. DEA agents searched the CS and his/her vehicle for illegal contraband and none was found besides the one (1) ounce of powder fentanyl.

13. Following the February 1, 2023 controlled purchase, law enforcement also surveilled the Red Mitsubishi, which made several stops. At one point, while the Red Mitsubishi was parked, law enforcement approached the Red Mitsubishi and initiated contact with its passengers, all of whom were at that point standing outside the car and two were seen smoking a substance that smelled of burnt marijuana. Two of the individuals were dressed in all black clothing and the third individual was wearing a gray hoodie and a black head covering. Upon request, the individuals provided their identifying information verbally. The male wearing a gray hoodie and black head covering identified himself as DORGILE. Law enforcement subsequently confirmed DORGILE's identity using a Computer Assisted Dispatch ("CAD") System that provided

DORGILE's photo on record with Florida DAVID records. Law enforcement compared that photo on record to the person who identified himself as DORGILE to confirm DORGILE's identity.

14. Beginning on or about April 17, 2023, and continuing through on or about May 4, 2023, the CS, at the direction of law enforcement and following the same procedures described above, arranged for another purchase of powder fentanyl from JONES. On or about May 1, 2023, the CS had a consensually recorded telephone call with JONES to arrange the purchase of approximately two (2) ounces of fentanyl. Arrangements were made to conduct the controlled purchase on May 4, 2023.

15. On or about May 4, 2023, the CS had several consensually recorded telephone calls with JONES to confirm the controlled purchase. On May 4, 2023, law enforcement surveilled the Residence. At approximately 11:17 AM, law enforcement observed a grey Honda Accord, with Florida license ending in -DFD (the "Grey Honda"), pull up to the Residence. Law enforcement observed JONES walk to the Grey Honda's front passenger side, lean into the car, and then walk back inside the Residence. JONES then returned from the Residence, carrying an empty black bag. JONES again approached the front passenger side of the Grey Honda, held the black bag up to the front passenger side window, and then returned into the Residence. The Grey Honda then drove off.

16. Subsequently, on or about May 4, 2023, law enforcement executed a search warrant at the Residence. *See* Case No. 23-6176-PAB (under seal). Inside the Residence, law enforcement located JONES, as well as two clear plastic bags containing a white powdery substance resembling fentanyl. JONES identified the substance as fentanyl to law enforcement. Law enforcement subsequently tested the two plastic bags using a Thermo Scientific TruNarc Narcotics Analyzer, which is a handheld drug detector that has been reliable in my experience. The Thermo Scientific

TruNarc Narcotics Analyzer indicated that one of the plastic bags, which weighed approximately 26.78 grams, tested positive for fentanyl. Analysis of the other plastic bag returned an inconclusive result.

17. JONES identified her dealer as a person she knew as "Mike Jones." JONES reviewed a series of photographs from Florida DAVID, ultimately identifying a photograph of DORGILE as the person she knew as "Mike Jones," and who had delivered the fentanyl to her earlier that day.

18. At the direction of law enforcement, JONES placed several consensually recorded phone calls to a person identified in her phone as "Mike Jones," with assigned call number ending in -4727 ("DORGILE's Phone"). JONES informed "Mike Jones" that a person had picked up the "zips" and that she had the money owed to him for the "zips." Based on my training and experience, the term "zip" refers to an ounce of controlled substances.

19. Subscriber records for DORGILE's Phone identify an address in Pompano Beach, Florida as both the residential and billing address for a subscriber named, "Mike Jones." According to Florida DAVID records, DORGILE's residential address is that same address in Pompano Beach, Florida.

20. During a consensually recorded telephone call, JONES and DORGILE arranged that "Mike Jones" would pick up the money that afternoon from the Residence. Law enforcement provided JONES with $2,700 OAF and a recording device.

21. At approximately 5:00 PM, law enforcement observed the Grey Honda park in front of the Residence. At law enforcement's direction, and under law enforcement surveillance, JONES walked to the front passenger side of the Grey Honda and handed DORGILE $2,700 OAF. Law enforcement then approached the Grey Honda and ordered all occupants to exit the Grey Honda.

As law enforcement approached, an officer observed DORGILE with money in one hand. That money was subsequently seized and confirmed to be the $2,700 OAF.

22.    JONES subsequently identified DORGILE as the person she knew as "Mike Jones."

23.    Based upon the information provided above, there is probable cause to believe that, from at least as early as on or about February 1, 2023, through on or about May 4, 2023, Michelle Lynn JONES and Tyrone Gerry DORGILE have knowingly conspired to distribute a controlled substance, that is, a mixture and substance containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Sections 841(a) and 846.

Respectfully submitted,

Patrick Gittelsohn
Special Agent
Drug Enforcement Administration

Sworn to and attested by _telephone_
per Fed. R. Crim. P. 4(d) and 4.1
on 5th day of May, 2023

HONORABLE PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

6

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 23-mj-6200-Hunt

### BOND RECOMMENDATION

DEFENDANT: TYRONE GERRY DORGILE

PRE-TRIAL DETENTION
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA:   Katherine W. Guthrie

Last Known Address: Unknown

What Facility: West Palm Beach Detention Center

Agent(s): Patrick Gittelsohn
(FBI)   (SECRET SERVICE)   (**DEA**)   (IRS)   (ICE)   (OTHER)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: 23-mj-6200-Hunt

### BOND RECOMMENDATION

DEFENDANT: MICHELLE LYNN JONES

$150,000 Personal Surety Bond
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____
AUSA:   Katherine W. Guthrie

Last Known Address: 4560 NW 16th Terrace

Tamarac, Florida 33309

What Facility:

Agent(s):   Patrick Gittelsohn
(FBI)   (SECRET SERVICE)   (**DEA**)   (IRS)   (ICE)   (OTHER)